**In re WASTE MANAGEMENT, INC. SECURITIES LITIGATION,**

**Jane S. Perkins, Seymour Perkins, and Morris Glenn Jr., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs**

v.

**Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants**

**Ralph Jacobs, on Behalf of Himself and All Others Similarly Situated, Plaintiff**

v.

**Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants**

**Steven J. Weiss, M.D. Profit Sharing Plan, On Behalf of Itself and All Others Similarly Situated, Plaintiffs**

v.

**Waste Management, Inc. and Rodney R. Proto, Defendants**

**Mark J. Novick, On Behalf of Himself and All Others Similarly Situated, Plaintiff**

v.

**Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants**

**David A. Beery, On Behalf of Himself**

and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Richard Krantz, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Local 144 Nursing Home Pension Fund, on Behalf of Itself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Nanette Bigler, On Behalf of Itself and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc. and Rodney R. Proto, Defendants

Katherine Albert, on Behalf of Herself and All others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto,

Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Neal Ginsberg, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., Rodney R. Proto, Earl E. DeFrates, William Rothrock, and Charles A. Wilcox, Defendants

Frank Ricotta, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Avi Gletzer, On Behalf of Himself and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc. and Rodney R. Proto, Defendants

Bernard Kwait, on Behalf of Himself and All others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Aaron Priest, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Joseph Stefens, on Behalf of Himself and All others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Salvatore Russo and Ann Marie Russo, On Behalf of Themselves and all Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Warren Hills, Individually and on Behalf of Himself and All Others Similarly Situated,

v.

Waste Management, Inc., John E. Drury, Ralph V. Whitworth, Rodney R. Proto, Earl E. DeFrates, Bruce E. Snyder, and Gregory T. Sangalis, Defendants

William R. Buehring, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto,

Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Alvin Pasternak, On Behalf of Himself and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc., Rodney R. Proto, Earl E. DeFrates, William Rothrock, and Charles A. Wilcox, Defendants

Michael Ceasar, On Behalf of Himself and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Douglas W. Bullock, On Behalf of Himself and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Sutherland–Yoest, and Charles A. Wilcox, Defendants

Thomas Lipka, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David

Southerland–Yoest, Charles A. Wilcox and Robert Paul Damico, Defendants

Michael Lopresti and Corinne L.L. Gelerman, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc., Robert Paul Damico, John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Southerland Yoest, and Charles A. Wilcox,

Louisiana School Employees' Retirement System, On Behalf Of Itself and All Others Similarly Situated, Plaintiff,

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, and Bruce Snyder, Defendants

Nathan Schwitzer, On Behalf Of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Southerland–Yoest, and Charles A. Wilcox, Defendants

Boris Shapiro, IRA On Behalf of Himself and All Others Similarly Situated Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, and Bruce Snyder, Defendants

Waldin Haddadin, On Behalf of Himself and All Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury,

Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Southerland–Yoest, and Charles A. Wilcox, Defendants

The City of Philadelphia Through Its Board of Pensions and Retirement, On Behalf of Itself and all Others Similarly Situated, Plaintiff

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, and Bruce Snyder, Defendants

Birmingham Retirement and Relief Fund and American Home Life Company, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, Miller J. Matthews, Jr., Ronald H. Jones, Robert S. Miller, Susan J. Piller, William A. Rothrock, Gregory T. Sangalis, Douglas G. Sobey, David Southerland–Yoest, Charles A. Wilcox, and Robert Paul Damico, Defendants

Gersh Korsinsky, On Behalf of Himself and All Others Similarly Situated,

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, and Bruce Snyder, Defendants.

Ruvane Vilinsky and Mitchell Vilinsky, On Behalf of Themselves and All Others Similarly Situated,

v.

Waste Management, Inc., John E. Drury, Earl E. DeFrates, Rodney R. Proto, and Bruce Snyder, Defendants

Jerry Krim, Plaintiff,

v.

Waste Management, Inc., Rodney R. Proto, John E. Drury, Miller J. Matthews, Jr., Ronald H. Jones, William

A. Rothrock, Robert S. Miller, Susan J. Piller, Gregory T. Sangalis, Douglas G. Sobey, David Southerland–Yoest, Charles A. Wilcox, and Robert Amico, Defendants.

Nos. CIV.A. H–99–2183, CIV.A. H–99–2222, CIV.A. H–99–2226, CIV.A. H–99–2231, CIV.A. H–99–2253, CIV.A. H–99–2258, CIV.A. H–99–2331, CIV.A. H–99–2334, CIV.A. H–99–2459, CIV.A. H–99–2460, CIV.A. H–99–2482, CIV.A. H–99–2483, CIV.A. H–99–2492, CIV.A. H–99–2507, CIV.A. H–99–2514, CIV.A. H–99–2515, CIV.A. H–99–2559, CIV.A. H–99–2560, CIV.A. H–99–2591, CIV.A. H–99–2610, CIV.A. H–99–26190, CIV.A. H–99–2619, CIV.A. H–99–2183, CIV.A. H–99–2670, CIV.A. H–99–2706, CIV.A. H–99–2802, CIV.A. H–99–2808, CIV.A. H–99–2824, CIV.A. H–99–2832, CIV.A. H–99–2838, CIV.A. H–99–3673, CIV.A. H–99–4311.

United States District Court,
S.D. Texas,
Houston Division.

May 8, 2000.

William S Lerach, Milberg Weiss Bershad Specthrie & Lerach, San Diego, CA, Roger B Greenberg, Greenberg Peden et al, Houston, TX, Travis E Downs, III, James Robert Hail, Milberg Weiss et al, San Diego, CA, for Jane S Perkins, Seymour Perkins, Morris Glenn Whitcomb, Jr.

Thomas E Bilek, Hoeffner Bilek & Eidman, Houston, TX, Michael P Lynn, Lynn Stodghill Melsheimer and Tillotson, Dallas, TX, for WMI Institutional Shareholder Group.

Jacks C Nickens, Clements O'Neill et al, Houston, TX, Alan Schulman, Bernstein Litowitz et al, San Diego, CA, for Louisiana State Employees' Retirement System.

D Gibson Walton, Vinson & Elkins, Houston, TX, Charles W Schwartz, Vinson & Elkins, Houston, TX, for Waste Management Inc., Robert S. Miller.

Mark K Glasser, Porter & Hedges, Houston, TX, for John E Drury.

Wallace L Timmeny, Dechert Price et al, James E Ballowe, Dechert Price et al, Vincent J Badolato, Dechert Price et al, Catherine Botticelli, Dechert Price et al, Washington, DC, for Earl E Defrates, Ronald H Jones, Susan J Piller, Douglas G Sobey, David Sutherland–Yoest, Charles A Wilcox.

Bruce Davidson Oakley, Bracewell & Patterson, Houston, TX, Alexander M Cooper, Eric F Grossman, Gary G Lynch, Davis Polk et al, New York, NY, for Rodney R Proto.

Kenneth R Wynne, Wynne & Maney, Houston, TX, for Miller J Matthews, Jr.

Stephen J Harburg, O'Melveny & Myers, Sarah M Kopp, Bruce A Hiler, O'Melveny & Myers, Washington, DC, for Gregory T Sangalis.

Jules Brody, Stull Stull & Brody, New York, NY, for Ambrose Hamm.

Jacks C Nickens, Clements O'Neill et al, Houston, TX, Alan Schulman, Bernstein Litowitz et al, San Diego, CA, for The Public Pension Fund Group.

*MEMORANDUM AND ORDER AP-POINTING LEAD PLAINTIFF AND APPROVING LEAD COUN-SEL*

HARMON, District Judge.

The above referenced proposed class action consists of thirty-two consolidated actions brought by Plaintiffs composed of Waste Management, Inc.'s stock, bond and/or options purchasers or acquirers whose investments were obtained during a proposed class period, as yet undetermined, sometime between 6/10/98 and 8/16/99.[1] The consolidated action alleges misrepresentations of material fact and omissions regarding Waste Management, Inc.'s business and finances, specifically with respect to its price adjustments, competitive position, and integration of mergers and acquisitions, that caused Waste Management, Inc.'s stock to inflate artificially and allowed insider-officials to sell their investments for proceeds of approximately $57 million, in violation of federal securities laws.[2]

Pending before the Court are the following motions:

(1) Motion of the City of Philadelphia, through its Board of Pensions and Retirement, for appointment as Lead Plaintiff and for Approval of Lead Counsel (instrument # 7);

(2) Motion of the Taft–Hartley Pension Group ("Taft–Hartley") for appointment of Lead Plaintiffs, approval of Lead Counsel, and entry of proposed pretrial order No. 1(# 11);

(3) Motion of the Connecticut Retirement Plans and Trust Funds ("Connecticut") for appointment as Lead Plaintiff and approval of its selection of counsel (# 14);

(4) Motion to appoint the Waste Management Plaintiffs Group ("WMPG") as Lead Plaintiffs and to approve Lead Plaintiffs' choice of counsel (# 16);

(5) WMI Institutional Shareholder Group's motion to appoint certain of its representatives as lead Plaintiffs and to approve lead Plaintiffs' choice of counsel (# 17);

(6) Motion to add the Houston Firefighters' Relief and Retirement Fund to the Public Pension Funds Group (# 28);

(7) WMPG's motion for expedited consideration of # 58 (# 59);

(8) Connecticut's petition for leave to file reply memorandum in support of its appointment as Lead Plaintiff (# 64);

---

1. The proper class period will be determined only after lead plaintiff is appointed, lead counsel is approved, and an amended complaint is filed.

2. Most of the various consolidated actions allege violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 promulgated under it, while some assert claims under Sections 11 and 12(a) of the Securities Act of 1933 and Section 13 of the Securities Exchange Act.

(9) Connecticut's petition for leave to substitute original affidavit for its faxed affidavit in # 64 (# 74);

(10) WMPG's motion to vacate order issued by Judge Gilmore in the *Korsinsky* matter (# 75) appointing lead plaintiff because Judge Gilmore no longer had jurisdiction to issue the order following consolidation of that suit with the above referenced action;

(11) Connecticut's motion for leave to file response to additional submissions by WMPG and the Public Pension Funds Group (# 103); and

(12) WMPG's motion for expedited consideration of motion and, in addition, motion for the Court to review two additional documents *in camera* and to file them under seal (# 108); and supplement and motion for the Court to review two additional documents *in camera* and to file them under seal (# 111).

As threshold matters, the Court grants those motions to which no opposition has been filed, i.e., # 28 (motion to join Houston Firefighters' Relief and Retirement Fund as a member of the Public Pension Funds Group), 64, 74, 75, and 103. WMPG's motion (# 59) for expedited consideration of # 58, i.e., of WMPG's expedited motion to review documents *in camera* and to place them under seal, is MOOT in light of this order. Furthermore, in light of instrument # 43, a letter from counsel for the City of Philadelphia indicating that it wishes to withdraw its motion to be appointed Lead Plaintiff and its counsel as Lead Counsel (# 7) and to join the motion of WMPG (# 16), # 7 is hereby DEEMED WITHDRAWN and joinder of the City of Philadelphia with WMPG is GRANTED.

The Court further concludes WMPG's [second and third] motion for expedited consideration and motions for the Court to

review two additional documents *in camera* and to file them under seal (# 108) and (# 111) should be DENIED. In opposition the Public Pension fund indicates that it and counsel for another movant never received WMPG's first motion (# 58), which the Court granted because no opposition was filed (# 106). Because the Court agrees that an effort to create the appearance of cohesion and decisiveness by submitting evidence of a recent meeting of a group of plaintiffs hand-picked by their counsel undermines the purpose of the PSLRA, while the *in camera,* under seal consideration of such materials by the Court deprives other movants from a fair opportunity to contest the adequacy of WMPG's steering committee, the Court denies the motion. Moreover, after reviewing the sealed materials submitted after the first motion was granted, the Court found they did not provide anything more informative than WMPG's arguments presented in its many pleadings before this Court, which the Court has considered.

Thus at issue here are four motions filed in the *instant* action for appointment of Lead Plaintiff(s) and Lead Counsel by the Taft–Hartley Pension Group (# 11), Connecticut (# 14), the Waste Management Plaintiffs Group (# 16), and the WMI Institutional Shareholder's Group (# 17). The Public Pension Funds Group was initially part of the WMI Institutional Shareholder Group that timely filed a motion for appointment of Lead Plaintiff and approval of Lead Counsel (# 17), on which Public Pension Funds Group still relies so that it will not be procedurally barred from consideration. Public Pension Funds Group now separately seeks appointment as Lead Plaintiff with the newly joined Houston Firefighters' Relief & Retirement Fund (# 29).[3] Moreover, because the Court va-

---

**3.** Initially part of the Waste Management, Inc. Institutional Shareholders Group that filed # 17, the Public Pension Funds modified their original motion, were joined by the Houston Firefighters (# 28), and now seek appointment as Lead Plaintiff on their own (# 29).

The Public Pension Fund Group is comprised of the City of Detroit Policeman & Fireman Retirement System, the City of Detroit General Retirement System, the Jacksonville Police and Fire Pension Fund, the City of Miami General Employees' Retirement Sys-

cated Judge Gilmore's order in H–99–2838 that erroneously granted that case's sole named Plaintiff Gersh Korsinsky's motion (# 3 in H–99–2838) to be appointed Lead Plaintiff and his attorneys as Lead Counsel after that case had been consolidated into the instant action on the docket of the undersigned judge, Korsinsky's motion is effectively also pending. Thus pending pleadings reflect that five parties seek appointment as Lead Plaintiff and approval of their attorney(s) as Lead Counsel.

Nevertheless, Taft–Hartley filed a notice (# 93) indicating that it now supports the motion of the Public Pension Funds Group to be appointed Lead Plaintiff. Thus the Court finds that Taft–Hartley's motion for appointment of Lead Plaintiffs (# 111) is MOOT. Taft–Hartley's notice states, however, that its support amends the Public Pension Funds Group's motion to add Taft–Hartley's counsel (Clements, O'Neill, Pierce, Nickens & Wilson) as co-Liaison Counsel and co-trial counsel.

**Applicable Law**

■ Under 15 U.S.C. § 78u–4(a)(3)(B)(i) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the Securities Exchange Act of 1934 by adding Section 21D, 15 U.S.C. § 78u–4, in class actions brought under federal securities laws, "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff to oversee the class action. Furthermore, "the presumption [of the adequacy of the plaintiff with the largest financial interest [4] in the outcome of the litigation] described in [15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ] may be rebutted only upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that he/she/or it is subject to unique defenses that render [him/her/or it] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

■ Based on the express language of the statute, courts have concluded that defendants lack standing to challenge the adequacy or typicality of the proposed lead plaintiffs at this early stage of the litigation. *See, e.g., Takeda v. Turbodyne Technologies, Inc.,* 67 F.Supp.2d 1129, 1138 (C.D.Cal.1999); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 550 (N.D.Tex.1997); *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60–61 (D.Mass.1996); *Fischler v. AmSouth Bancorporation,* 1997 WL 118429, *2 (M.D.Fla.1997); *Zuckerman v. Foxmeyer Health Corp.,* 1997 WL 314422, *2 (N.D.Tex.1997). The Court observes that while defendants lack standing to challenge plaintiffs' motions to appoint certain among them as Lead Plaintiff, defendants do have the right subsequently in a class certification hearing to object to those

---

tem, the Louisiana School Employees' Retirement System, the Louisiana State Employees' Retirement System, the State of Louisiana Firefighters' Retirement System, and the New Orleans Employees' Retirement System. The Public Pension Fund Group is represented by the firms of Bernstein Litowitz Berger & Grossmann L.L.P. and Lynn Stodghill Melsheimer & Tillotson, L.L.P.

Because the Houston Firefighters' Relief & Retirement Fund did not move for appointment as Lead Plaintiff within the 60–day period allowed by the PSLRA, as discussed later in this opinion, it asks the Court not to consider its losses for purposes of determining the largest financial interest in this group, although it is willing and has signed a supporting certification to serve as a representative plaintiff. Ex. 1 to # 28.

4. The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. A four-factor inquiry has been developed by the district court in *Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, *5 (N.D.Ill. Aug.11, 1997), and recognized in *In re Olsten Corp. Securities Litigation,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998). and in *In re Nice Sys. Securities Litigation,* 188 F.R.D. 206, 217 (D.N.J.1999). The four factors relevant to the calculation are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Id.*

Plaintiffs as typical of and adequate representatives of the proposed class. *In re Nice Systems Securities Litig.*, 188 F.R.D. 206, 218 n. 11 (D.N.J.1999); *Zuckerman*, 1997 WL 314422 at \*2; *Gluck*, 976 F.Supp. at 547; *Greebel*, 939 F.Supp. at 60–61; *In re Cephalon Securities Litig.*, 1996 WL 515203 (E.D.Pa. Aug. 27, 1996). Furthermore, this Court may *sua sponte* evaluate the adequacy of any proposed person or group of persons as Lead Plaintiff(s). *Takeda*, 67 F.Supp.2d at 1138; *Sakhrani*, 78 F.Supp.2d at 854 (court has independent responsibility to consider appointment of lead counsel). It is clear that "[t]he PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation." *In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42, 45 (S.D.N.Y.1998).

Under the relevant portions of 15 U.S.C. § 78u–4(a)(3)(A)(i) and (a)(3)(B)(iii)(I), after national notice[5] of the pending proposed class action by a plaintiff within twenty days of his/her/or its filing of a class complaint, any member of the putative class may file within sixty days of the publishing of that notice a motion to serve as Lead Plaintiff. 15 U.S.C. § 78u–4(a)(3)(A). If more than one suit is filed with substantially the same claims, only the plaintiff in the first-filed action need publish the notice. 15 U.S.C. § 78u–4(a)(3)(A)(ii). In the instant action, there is no dispute that the plaintiffs in *Perkins* filed on *Business Wire* on July 8, 1999 an adequate notice of the pendency of this action and description of its claims.

After consolidation of parallel actions, under the PSLRA a district court

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

Furthermore, Section 21D(a)(3)(B) of the amended Securities Exchange Act of 1934 requires the Court to adopt a rebuttable presumption that

> the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The statutory presumption of appointment as lead plaintiff, as noted, may only be rebutted by another plaintiff through evidence that the lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of ade-

---

**5.** Under § 21D of the Exchange Act, 15 U.S.C. § 78u–4(a)(3)(A)(i), a plaintiff seeking to represent the class

> Shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class—
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period;
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

Thus being first to file a complaint is no longer a guarantee of the lead plaintiff position. Section 21D(a)(3)(B)(i), 15 U.S.C. § 78u–4(a)(3)(B)(i) provides,

> Not later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the class determines to be most capable of adequately representing the interests of the class member . . . .

quately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

 Under Section 21D(a)(3)(B) of the Exchange Act, therefore, the lead plaintiff or plaintiffs must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Typicality is achieved where the named plaintiffs' claims arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D.Tex.1988). Typicality and adequacy are directly relevant to the choice of the class representative and Lead Plaintiff in securities fraud cases. *See, e.g., In re Oxford Health Plans, Inc. Securities Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *Gluck*, 976 F.Supp. at 546; *Fischler*, 1997 WL 118429 *2. Although the inquiry at this stage of the litigation in determining the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. *Switzenbaum v. Orbital Sciences Corp. ("Orbital I")*, 187 F.R.D. 246,

248–49 (E.D.Va.1999) (Compendium (# Ex.F), *citing Chill v. Green Tree*, 181 F.R.D. 398, 407 n. 8 (D.Minn.1998), and *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, *6 (N.D.Ill. Aug.11, 1997)).

Under the PSLRA, the Lead Plaintiff, subject to court approval, is to select and retain Lead Counsel. 15 U.S.C. § 78u–4(a)(3)(B)(v). The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

In passing the PSLRA in December 1995, Congress was reacting to significant evidence of abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits. H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. at 31 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730 at 731 ("Conf.Report") (Ex. A to # 38). One response by Congress was the requirement that the Court appoint as "lead plaintiff" in each securities class action the shareholder, preferably an institutional investor,[6] with the largest financial interest in the litigation in order to encourage institutional investors to come forward to manage the litigation and supervise the class action lawyers. 15 U.S.C. § 78u–4(a)(3)(B); Conf. Report No. 104–369 at 733–34. The Conference Report, at 34, explained, "Throughout the process, it is clear that the plaintiff class has difficulty exercising any meaningful direction over the case brought on its behalf .... Because class counsels' fees and expenses sometimes amount to one-third or more of the recovery, class counsel frequently has a significantly greater interest in the litigation than any individual member of the class." Thus one goal of the PSLRA is to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incen-

---

**6.** Conference Report No. 104–67 at 34–35; Sen. Rep. No. 104–98 at 10–11, *reprinted in* 1995 U.S.C.A.A.N. 679, 689–90. *Sakhrani v. Brightpoint*, 78 F.Supp.2d 845, 850 (S.D.Ind. 1999); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 548 (N.D.Tex.1997); *In re Baan Co. Securities Litig.*, 186 F.R.D. 214, 218 (D.D.C. 1999) (appendix).

tive, monitor the litigation to prevent its being "lawyer-driven."

Courts have diverged in deciding whether the losses of individual plaintiffs may be aggregated into a group loss to create a lead plaintiff group with the "greatest financial interest" in the outcome of the litigation. *Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1152–53 (N.D. Cal.1999) (and cases cited therein). Some courts have read literally the statute dealing with determining who is the most adequate plaintiff, which employs the phrase, "the person or group of persons" that meet the designated criteria. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). *Id.* at 1153 & n. 8, *citing* as published opinions of courts allowing aggregation of unrelated plaintiffs into a Lead Plaintiff Group, *In re Olsten Corp.*, 3 F.Supp.2d 286 (E.D.N.Y.1998); *Switzenbaum v. Orbital*, 187 F.R.D. 246 (E.D.Va. 1999); *In re Milestone Scientific*, 183 F.R.D. 404 (D.N.J.1998); *In re Cendant*, 182 F.R.D. 144 (D.N.J.1998); *In re Oxford*, 182 F.R.D. 42; *Chill v. Green Tree Financial*, 181 F.R.D. 398 (D.Minn.1998); *Gluck*, 976 F.Supp. 542; *In re Donnkenny, Inc. Securities Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997); *Greebel*, 939 F.Supp. 57. *See also Yousefi v. Lockheed Martin Corp.*, 70 F.Supp.2d 1061, 1067–68 (C.D.Cal.1999) (recognizing tension between PSLRA' language permitting aggregation of claims and its emphatic purpose of placing control of securities class actions in hands of a small and finite number of plaintiffs, but finding that it contemplates the aggregation of unrelated plaintiffs as a permissible, if suboptimal, result).

Other judges have allowed aggregation where necessary to represent varying class periods or to guarantee effective control and supervision of the lawyers. *Aronson*, 79 F.Supp.2d at 1153, *citing Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 585–86 (N.D.Cal.1999). *See also In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) ("a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers").

Some courts have rejected aggregation of "unrelated" Plaintiffs and permit a group Lead Plaintiff only where it involves "a small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person." *Aronson*, 79 F.Supp.2d at 1153–54, *citing In re Telxon Corp. Securities Litig.*, 67 F.Supp.2d 803, 809–13 (N.D.Ohio 1999) (contrasting a "group" with a "melange of unrelated persons"). *Aronson* characterizes this approach as defining a "group" under the PSLRA as having "a meaningful relationship preceding the litigation, and ... united by more than the mere happenstance of having bought some securities. The classic example of such a restrictive group would be a partnership, which has no separate legal identity, but shares in both assets and liabilities. Other such groups might be the various subsidiaries of a corporation or members of a family." *Id.* at 1153–54. The *Aronson* court, faced with groups of plaintiffs as large as 4,000 competing for lead plaintiff, adopted this strict approach. *Id.* at 1154. *Aronson* emphasizes that such a narrow view accords with several dictionary definitions of the word "group" and is consistent with the legislative intent to increase investors'/clients' control over appointed counsel, since any ambiguity in the statute should be resolved by a determination of the drafters' intent. *See also In re Network Associates*, 76 F.Supp.2d at 1026 (a group of plaintiffs should be appointed as lead plaintiff only where they can effectively control the litigation; aggregations of unaffiliated persons or entities whose only connection is the litigation do not satisfy this requirement); *In re Donnkenny Securities Litigation*, 171 F.R.D. 156, 157–58 (S.D.N.Y.1997) (denied plaintiff's motion to appoint two institutional investors and four individuals as lead plaintiff group because "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of

choosing a lead plaintiff .... To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."); *Sakhrani*, 78 F.Supp.2d at 853 (the PSLRA gives court discretion to appoint a single plaintiff or a small group with effective oversight of class counsel and with a greater connection than their common losing investment as lead counsel, based on facts of particular case).

■ The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported "group" and that failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff. *Switzenbaum v. Orbital Sciences Corp. ("Orbital I")*, 187 F.R.D. 246, 248–50 (E.D.Va.1999) (Compendium (# Ex.F); *Ravens v. Iftikar*, 174 F.R.D. 651, 654 (N.D.Cal.1997)). Furthermore, the SEC in an *amicus curiae* brief filed in the *Orbital* litigation, Compendium Ex. G at p. 14, made clear that a group of plaintiffs should be quite small: "The Commission believes that ordinarily, in order to ensure adequate stakes, monitoring, coordination and accountability, such a group should be no more than three to five persons, and the fewer the better." Even then, the SEC emphasizes that the group's "members should be evaluated separately for their incentive and ability to work together to control the litigation." *Id.*

■ It appears to this Court that too loose a definition of "group" would result in the manipulation and manufacturing of enormous groups of unrelated investors by attorneys in order to obtain appointment of an uncohesive, disparate, and thus weakened, group of Lead Plaintiffs and approval of themselves as Lead Counsel, a lucrative role. *Sakhrani*, 78 F.Supp.2d at 851–52 (and cases cited therein); *In re Network Associates*, 76 F.Supp.2d at 1022. Some of the accusations made in this and other securities fraud cases on its docket about Weiss & Yourman's method of recruiting plaintiffs demonstrate the dangers of undermining the PSLRA when such restrictions are not imposed. After a careful review of the case law, this Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment.

Accordingly, the Court summarizes in somewhat abbreviated form, in an attempt to eliminate much of the redundancy and distracting detail in the massive file, the four remaining requests for appointment of Lead Plaintiffs and approval of Lead Counsel and the opposition to each.

### Connecticut's Motion for Order Appointing Lead Plaintiff and Approval of Lead Counsel

■ Connecticut,[7] during the period from June 10, 1998 through August 13, 1999, purchased 528,100 shares of Waste Management stock, or 376,210 net shares, at the cost of $25,482,603 and suffered losses of $13,593,617 because of Defendants' alleged misconduct. Certification of Catherine E. LaMarr, General Counsel for the Office of the Treasurer for the State of Connecticut, attached to Motion. It claims that it is the most adequate plaintiff to serve as Lead Plaintiff because it has com-

---

7. Representing that it holds assets of over $20 billion on behalf of 160,000 beneficiaries, Connecticut is composed of all six retirement and trust funds managed by the Connecticut State Treasury, including *inter alia* the Connecticut State Teachers' Retirement System, the Municipal Employees' Retirement System and the Employees' Retirement System, the Probate Judges' and Employees' Retirement System, the Judges' and Compensation Commissioners' Retirement System, the Policemen and Firemen Survivors' Benefit Fund, and the Attorneys' Retirement System.

plied with the PSLRA's procedural requirements by filing its motion for appointment within sixty days of the notice of the class action and its certification delineating its transactions with Waste Management securities during the class period, has reviewed the complaints, and is willing to serve as a representative on behalf of the putative class. It is overseen by the Treasurer of the State of Connecticut, Denise L. Nappier, who is the sole fiduciary for Connecticut having authority to initiate suit on its behalf. Affid. of Catherine E. LaMarr, General Counsel, at 2. Furthermore, Connecticut maintains that it has selected competent and experienced counsel in Goodkind Labaton Rudoff & Sucharow LLP, which has recognized recently in various cases [8] as appropriate Lead Counsel. Plasse Affid., Ex. C.

Connecticut maintains that it has the largest financial interest in the relief sought. The term "largest financial interest" standard should be read broadly in terms of (1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the plaintiff(s). *Lax,* 1997 WL 461036, *5; *Olsten,* 3 F.Supp.2d at 295; *Milestone,* 183 F.R.D. at 412; *Gluck,* 976 F.Supp. at 546 (number of shares purchased during class period, overall dollar investment, and estimate of probable losses).

At the time Connecticut filed its motion, no party claimed to have sustained greater financial losses from the purchase and sale of Waste Management common stock during the class period. As an institutional investor, the type preferred as Lead Plaintiff under the PSLRA, that has complied with all prerequisites, Connecticut asks to be appointed Lead Plaintiff. It quotes from the House Conference Report No. 104–369, 104th Cong. 1st Sess. at 34 (1995),

The Conference Committee believes that ... in many cases the beneficiaries of pension funds—small investors—ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

Connecticut also asserts that it satisfies the requirements of Fed.R.Civ.P. 23, in particular typicality and adequacy. Its claims are typical in that it purchased Waste Management stock during the class period at prices artificially inflated by Defendants' false and misleading statements and that it was damaged by the fraud. It is also an adequate representative because its chosen attorneys have the experience and ability to conduct the litigation and because Connecticut does not have interests antagonistic to those of the class. *Rubenstein v. Collins,* 162 F.R.D. 534, 538–39 (S.D.Tex.1995). As evidenced by its certification affirming its interest in participating as Lead Plaintiff in these consolidated cases, Connecticut states that it will protect the class' interests and has retained experienced counsel for prosecution of this securities law class action.

In sum, Connecticut urges that to allow the aggregation of competing multi-membered groups' losses without their showing the requisite relatedness as a "group" under the PSLRA would undermine the benefits of having Connecticut, an institutional investor with the largest loss, as active Lead Plaintiff and would defeat the goals of the PSLRA. Furthermore, in addition to having competent and experienced

---

**8.** *See STI Class Funds et al. v. Bollinger Industries, Inc. et al.* (N.D.Tex.) (representing an affiliate of SunTrust Banks, Inc.); *In re Vesta Insurance Group, Inc. Securities Litig.* (N.D.Ala.) (representing the Florida State Board of Administration); and *In re Orbital Sciences Corp. Securities Litig.* (E.D.Va.) (representing a number of New York City Pension Funds).

counsel in a single law firm,[9] Goodkind Labaton, to represent the class, Connecticut has entered into a fee agreement with that firm for lower fees that are typically awarded in securities fraud class actions. LaMarr Affidavit at ¶ 19.

**Opposition to Connecticut's Motion**

WMPG, which is composed of public and private institutions and large individual investors that have lost over $46.6 million, opposes Connecticut's motion. Not only does WMPG claim to be the group of persons with the largest financial interest in the relief sought by the putative class, but it argues that the actual statutory language of the PSLRA does not reflect a preference for institutional investors or give them privileged status. As indicted, this Court finds the legislative history, the SEC's pronouncements, and the recent trend in court decisions persuasive to the contrary conclusion.

WMPG first emphasizes that Connecticut, which has lost only $13.5 million, is composed of six *separate* state pension systems for various types of employees of the State of Connecticut. WMPG points out that Connecticut statutory provisions separately created each of these legal entities. Each system operates as an independent legal entity with its own management structure for the benefit of the designated type(s) of Connecticut state employees. Connecticut has cited Connecticut Regulation § 3–31b–3, which allows the separate Connecticut pension systems to place their funds into seven combined investment funds created and administered by the State Treasurer, including money market, domestic and foreign equity, fixed income, real estate investments, and private market investment funds. WMPG notes that Regulation § 3–31b–4, not cited by Connecticut, states that each participating system shall have its own separate interest in each combined fund. WMPG insists that it is the seven pooled investment funds, and not the separate retirement systems, that are referenced as the "Connecticut Retirement Plans and Trust Funds" and that seek to serve as Lead Plaintiff here. WMPG charges that LaMarr's Declaration fails to state that the Connecticut Treasurer has obtained the authority of any of the six separate pension systems, the State Retirement Commission or the Trustee of the State Teachers Retirement Fund to sue on their behalf. Connecticut's motion is therefore made on behalf of something that is not a legal entity, but only a descriptive term, a name used to designate the seven pooled investment funds listed in Regulation § 3–31b–3. WMPG claims that the six separate employee pension funds, which, under Regulation 3–31b–4, are the actual owners of the investments, including Waste Management stock, made through those funds and which have actually lost the money, have not moved for Lead Plaintiff status. WMPG complains that the motion also makes it impossible to determine which of the six pension systems actually purchased stock, how many shares, when the purchases were made, at what price, and which pension system suffered what loss. Moreover, treating the Connecticut funds as a single legal entity entitled to appointment as Lead Plaintiff with a $13.5 million loss is contrary to the clear language of the PSLRA and nearly every court decision interpreting it, which make clear that because aggregation of losses is allowed, the group of persons with the largest loss, not the largest individual loser, that is presumptively entitled to appointment as Lead Plaintiff. *Reiger v. Altris Software*, Case No. 98CV05285 (JFS), 1998 U.S. Dist. LEXIS 14705 (S.D.Cal. Sept. 11, 1998); *Bobrow v. Mobilemedia, Inc.*, No. 96–4715, Order and Letter Op. at 5 (D.N.J. Mar. 31, 1997).

---

9. Connecticut observes that courts have been concerned that the representation of Lead Plaintiffs by numerous law firms will likely result in lawyer driven litigation. *Telxon*, at 815–16; *Milestone*, 187 F.R.D. at 176, 178 ("class actions are not to be used as a vehicle to promote attorney employment").

In contrast WMPG highlights the fact that it is an organized functioning group with an eleven-member steering committee composed of institutional and individual investors with the largest aggregated losses to oversee and manage the litigation on behalf of WMPG, and that these eleven members, themselves, have lost more than $30 million. See chart, p. 2 of # 1, delineating names, description of securities purchased, and loss of each of the steering committee members. WMPG explains that to avoid a dispute, it asked Connecticut to join WMPG and to participate as one of the steering committee, while its counsel, Goodkind Labaton, could become a third co-lead counsel, but WMPG's offer was refused by Connecticut. WMPG argues that Connecticut cannot serve as Lead Plaintiff because Connecticut's aggregated losses are substantially less than the aggregated losses of WMPG, as well as less than the aggregated losses of the eleven members of the steering committee and less than the aggregated $16.2 million losses of the twelve other institutional investors in WMPG.

WMPG contends that Connecticut is not entitled to special treatment because it is composed of public pension systems, i.e., institutional investors. The PSLRA creates a presumption that the *group of persons* with the largest, aggregated financial interest in the relief sought by the class shall be appointed to serve as Lead Plaintiffs. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc). This provision favors large investors but is not limited to public and private institutions, and the statute does not provide that an institution has an advantaged position. Even if it did, WMPG emphasizes that it includes twelve public and private institutional investors with losses exceeding those of Connecticut.

Furthermore, WMPG maintains, not only is "Connecticut Retirement Plans and Trust Funds" not a legal entity, but it is not composed of the beneficial owner(s) or purchaser(s) of Waste Management stock purchased during the class period. The actual purchasers and owners are the various retirements systems, which have not quantified their individual purchases and losses and have not moved for Lead Plaintiff status. Thus the Connecticut Retirement Plans and Trust Funds lack standing [10] to pursue the claim under the federal securities funds and therefore are not adequate plaintiffs. *See, e.g., In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 508 (S.D.N.Y.1996)(Member funds, not state of Louisiana, have right to assert their claims as they were the actual purchasers and sellers of the securities); *Prudential Ins. Co. v. BMC Indus., Inc.,* 655 F.Supp. 710 (S.D.N.Y.1987)(employer Atlantic Richfield lacked standing to sue because retirement plans and their employee beneficiaries suffered actual damages).[11] The motion is defective because it does not identify which, if any, of the

---

**10.** WMPG points out that in suing for a securities violation of § 10(b) or Rule 10b–5, "only actual purchasers and sellers of securities have standing to pursue private causes of action under the anti-fraud provisions of the Securities Exchange Act of 1934." *Davidson v. Belcor, Inc.,* 933 F.2d 603, 606 (7th Cir. 1991), *citing Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.1952). Connecticut has provided no proof of what purchases the different systems made or of the losses they suffered.

**11.** Connecticut argues that these cases are inapposite. Reply Memorandum (# 65) at 6 n. 5. In *In re NASDAQ,* the deficiency found by the court involved the Louisiana Attorney General's lack of authority to act as a party in interest on behalf of the state agencies because the statute states only that the Attorney General may act as *counsel* for them. 169 F.R.D. at 507. In the instant case, the Attorney General is acting "of counsel" and Connecticut, the real party in interest, has come forward to assert its claims as the injured plaintiff. In *Prudential Ins.,* 655 F.Supp. 710, the court rejected Atlantic Richfield's attempt to come forward as a real party for its employees' retirement fund. Here, as will be discussed later with regard to Connecticut's Reply Memorandum (# 65), Connecticut purchased the Waste Management stock, suffered the loss, and has come forward as the real party in interest.

retirement systems actually have or has standing to pursue such claims.

An additional obstacle for Connecticut, according WMPG, is that under Connecticut General Statutes § 45a–541(e), § 5–155a(a) and (c)(1999), the trustee of each pension system involved here is required to invest and manage its assets solely in the interests of the respective system's beneficiaries. Hail Decl., Ex. 30. Thus the systems cannot spend or risk their assets for the benefit of anyone other than the plan's beneficiaries. Assuming fiduciary status as Lead Plaintiff(s) would expose the retirement system(s) to possible liability for the costs of prosecution if the case is unsuccessful, or to legal fees and costs of the defense under the mandatory sanction provision of the PSLRA if the suit should be found to be frivolous. *See, e.g., Oxford Health Plans*, 182 F.R.D. at 47. Moreover, WMPG asks whether Connecticut may, in the fiduciary capacity of a class representative, represent the interests of absent class members when the state statutorily requires it to act in the sole interest of its plan beneficiaries. Such a potential conflict would be aggravated since Connecticut has not sued for, nor does it pursue recovery on behalf of, purchasers of Waste Management's publicly traded 2% and 4% convertible debentures, due in 2002 and 2005 respectively, and it is thus disqualified from serving as Lead Plaintiff, as is WMI Institutional Shareholder Group for the same reason. WMPG also claims that Connecticut did not acquire any Waste Management common stock in exchange transactions nor purchase any publicly traded options to purchase stock of Waste Management. In contrast to Connecticut's fiduciary responsibility to act only in the interests of its beneficiaries, and thus not in the differing interests of the larger absent class, WMPG's eleven-person steering committee can represent the competing interests of all purchasers

of Waste Management's publicly traded securities sued for in this action.

WMPG also asserts that the Treasurer of the State of Connecticut Denise Nappier is too busy to monitor this complex securities class action litigation because she is otherwise occupied with an investigation of her predecessor, Paul Silvester, who pled guilty on September 23, 1999 to federal racketeering and money laundering charges amid allegations that he received illegal kickbacks and finder's fees for investing state pension funds during his term of office and funneling monies into his 1998 campaign. The scandal has led to an investigation of all financial firms that managed investments for the State pension system, with Nappier involved with the Connecticut Attorney General and the U.S. Attorney in a full review of the matter. Furthermore, suggests WMPG, Connecticut's alleged losses of $13.6 million from its Waste Management common stock, with many of the transactions in issue occurring during the period of Silvester's administration,[12] are uncertain because of the criminal charges that state pension assets were illegally directed to investment managers, who in turn may be involved with this litigation. The state is seeking restitution and possibly rescission of all trades traced to assets improperly directed to this scheme by Silvester's administration. Connecticut cannot be an adequate representative if its interests are divergent from those of the class.

In reply (# 65), Connecticut emphasizes that the other original competing groups for appointment as Lead Plaintiff have "shifted." Eleven members of the original forty-eight member WMI Institutional Shareholder Group have withdrawn, and eight of those have formed a separate group, the Public Pension Funds Group, which seeks to add a new member, the Houston Firefighters, without aggregating

---

**12.** Catherine La Marr, General Counsel to the Connecticut State Treasurer, has submitted a Certification dated September 3, 1999 indicating that Connecticut, which purchased a total of 528,101 shares of Waste Management common stock, purchased 510,682 of them at the end of Silvester's administration, between July 9–November 11, 1998.

Houston Firefighters' losses because of its untimely joinder. Many of the remaining investors did not timely move for Lead Plaintiff designation. Moreover, there are too many members to qualify as a "group" and their ability to control is dubious. Connecticut observes that WMPG alternately presents as its proposed Lead Plaintiff all of its 660 members (with a $46.6 million loss), a twelve-member "institutional group" (with a $16.2 million loss), its eleven-member steering committee (with a $30 million plus loss), or its three-person executive committee of that steering committee (loss amount not identified). Connecticut maintains that this "shell game" only emphasizes WMPG's "lack of cohesiveness."[13] Connecticut characterizes the situation as a revolving door through which the groups' membership and structure are constantly changing. Connecticut quotes from *Orbital I*, at 251 (Ex. F to Opposition Compendium, # 15), to demonstrate that its rationale regarding lack of cohesiveness disqualifying such groups from appointment as Lead Plaintiff applies here, too:

> In short, the Orbital Plaintiffs Group is unable to agree on who its members are, some of its proposed members are ineligible to act as the Lead Plaintiff in any event, one formulation of the Group would include more people than could possibly manage the case, and the Group has never been forthcoming about any of these conflicts at all. With this degree of disorder among its leadership ranks, it cannot credibly claim to offer adequate representation to others. Under these circumstances, the Orbital Plaintiffs Group is not entitled to a presumptive designation as the Lead Plaintiff, and even if it were, its inability to man-

age itself so far would amply rebut the presumption that could fairly and adequately protect others.

In contrast, Connecticut asserts that it remains the applicant with the single largest loss, that its sole trustee, Denise L. Nappier, Treasurer of the State of Connecticut, has the authority and standing to be Lead Plaintiff on behalf of Connecticut and to control the prosecution of this litigation, that Connecticut has retained a single law firm highly experienced in securities litigation and has negotiated reduced fees with it, and that Connecticut has the resources, personnel, and commitment to prosecute this action vigorously. Reply Affidavit of Catherine E. LaMarr, ¶¶ 5,8,11–16, attached to # 65.

With support from LaMarr's Reply Affidavit (# 66), Connecticut shows that the State Treasurer has the right to bring this action on behalf of the funds. Connecticut is a single fund into which all of the combined moneys of the various pension systems (the funds) are combined. Connecticut then invests the pooled money into several portfolios based on various investment objectives. It purchased the Waste Management stock at issue here from the pooled money. Using the broad grant of authority to invest the state's trust funds (Conn.Gen.Stat. § 3–13d), enter into "such contractual agreements as may be necessary" (Conn.Gen.Stat. § 3–11a), and do all things "necessary, convenient or desirable to carry out the powers" granted to her (Conn. Gen. State § 3–76h(1)), the Treasurer has entered into agreements with asset managers to purchase securities on behalf of Connecticut, participated in various class action and shareholder litigation, including *Cedent* and *In re Oxford health*

---

**13.** Connecticut quotes from *Baan*, 186 F.R.D., at 217, in which the court rejected a group of 466 investors with a subgroup of 20 that moved for appointment as Lead Plaintiff,

> Plaintiffs are playing a shell game with the statute. The statute's presumption is applied according to the "financial interest" of the "group of persons" proposed as Lead Plaintiff. By that measure, the question is

whether the 20–person subgroup has the largest financial interest in the relief and satisfy [*sic*] the other criteria.

Connecticut complains that "it is presently impossible to determine which of its many subgroups the Waste Management Plaintiffs Group proposes for Lead Plaintiff, and therefore difficult to determine what it claims its losses are."

*Plans Inc. Sec. Litig.*, filed proofs of claim on behalf of Connecticut in connection with settlements of securities fraud actions, and entered into other agreements, including custodial agreements, in connection with investments made on Connecticut's behalf. The Treasurer has also authorized the filing of its motion to be appointed Lead Plaintiff here.

Connecticut accuses Milberg Weiss of hypocrisy in arguing that Connecticut does not have standing here to move for appointment as Lead Plaintiff because Milberg Weiss filed a similar motion on behalf of Connecticut (ánd not the separate pensions systems) for appointment of then state Treasurer Paul Silvester as trustee of the various pension funds as Lead Plaintiff in *In re Cendant Corp. Litig.*, 182 F.R.D. 144 (D.N.J.1998)(*"Cendant"*). Ex. A to Compendium of Exhibits, attached to # 65.[14] Furthermore, Milberg Weiss continues to represent Connecticut in the *Cendant* litigation. Connecticut objects to Milberg Weiss' challenge to its application to serve as Lead Plaintiff here as a conflict of interest in that Milberg Weiss is acting adversely to Connecticut's interests here.

Connecticut also submits paragraphs 19–21 of General Counsel LaMarr's Reply Affidavit to refute "offensive" and "baseless" suggestions that Silvester's criminal misconduct and guilty plea relate in any way to Connecticut's investments in Waste Management stock or challenges to the *bona fides* of present Treasurer Nappier, who is not too busy trying to get Connecticut's "financial house in order" to prosecute this action. Connecticut insists that none of its investments in Waste Management stock are involved in the criminal investigation and that Connecticut will not seek rescission or restitution with regard to those investments.[15] It accuses Milberg Weiss of a pattern of disloyalty to its clients and placing its own financial interests above those of its past and current clients, including Connecticut, and maintains that Milberg Weiss is "not fit to serve as counsel in this action." [16]

Furthermore, Connecticut argues that WMPG's contention that Connecticut cannot act for the benefit of class members who are not also its beneficiaries has been

---

14. Connecticut asserts the same is true for the Public Pension funds Group and its counsel, Bernstein Litowitz. Bernstein Litowitz represented Connecticut in *Oxford*, in which it filed a notice of appearance for Connecticut, not on behalf of the multiple funds. Bernstein Litowitz also described Connecticut as "one entity" in earlier papers. Exhibit B to Compendium (# 65).

15. This Court observes that the same derogatory but nonspecific and unsupported allegations without proof were recently asserted in *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00–152(JEI), 2000 WL 486956, *2 (D.N.J. Apr. 24, 2000):

One party suggested that the indictment of Connecticut's previous State Treasurer for malfeasance in office might create some unique defense against the current occupant of that office. However, there is nothing in the record to suggest that Connecticut's purchase of Campbell stock was involved in the wrongdoing which led to the indictment, or that the indictment would interfere with the current Treasurer's ability to conduct the current litigation.

The court went on to appoint the Treasurer of the State of Connecticut as a co-Lead Plaintiff with two individual investors because it determined that Connecticut had the largest financial interest in the suit and was an institutional investor. *Id.* *3. It also reserved " 'the right to alter this structure at any time and for any reason, and will do so if it finds the progress of the litigation is being delayed ... or if the structure established proves detrimental, in any way to the best interests of the class.' " *Id.*, quoting *Oxford Health Plans*, 182 F.R.D. at 51.

The Court further notes that WMPG's counsel, Milberg Weiss, has made other unfortunate and unsupported accusations against Connecticut which it has had to subsequently "correct." WMPG's Corrective Brief (# 102).

16. Connecticut further notes that Milberg Weiss knew Connecticut was properly before this Court as evidenced by its invitation to Connecticut to join the WMPG as an additional Lead Plaintiff, just fifteen days before Milberg Weiss filed the brief challenging Connecticut's standing.

rejected as a "false premise" by the Department of Labor in an *amicus curiae* brief submitted by the Secretary of Labor in *Telxon*, which concluded that there was no conflict in benefiting others while fulfilling a fiduciary duty to ERISA plan beneficiaries. Ex. D to Compendium (# 15).[17]

Finally Connecticut represents that contrary to WMPG's assertion that Connecticut cannot properly represent the convertible debenture holders because it did not purchase any bonds, Connecticut states that it purchased both the 2% and 4% convertible debentures during the class period and lost approximately $825,000 in the process. Reply Affidavit at ¶ 20. With its $13.5 million loss in stock, its total financial interest in this litigation is $14,325,000.

WMPG's additional allegations against Connecticut were subsequently withdrawn.

WMPG replies also that throughout the course of this litigation, it has remained uniform and consistently requested appointment of *all* its members as Lead Plaintiffs. It also clarifies that its steering committee and its executive committee are not separate Lead Plaintiffs groups seeking appointment. The "institutional group" was only identified to demonstrate that its institutional investors suffered

greater losses than did Connecticut and would play a major role in the litigation. **Motion for Order Appointing WMPG Lead Plaintiff and for Approval of Lead Counsel**

■ Waste Management, Inc. common stock and convertible bond holders seek an order appointing WMPG[18] as Lead Plaintiff. They argue that because WMPG consists of institutions and individuals that either purchased the common stock and/or convertible bonds[19] through the open market or acquired such in exchange for other securities in corporate acquisitions, WMPG is the most diverse Lead Plaintiff group and therefore the best able to represent the interests of all class members, as well as having the largest financial interest in the relief sought, since WMPG, all together, lost over $30,439,858 following their purchase or acquisition of the Waste Management, Inc. securities. Thus under § 78u–4(a)(3)(B)(iii)(I)(bb), it is presumptively entitled to appointment as Lead Plaintiffs. Furthermore, for purposes of efficient management and oversight of the litigation, WMPG has formed the previously mentioned steering committee of eleven members, composed of institutions and individuals, stockholders and bondholders, domiciled all over the United States.[20] *In*

---

**17.** Connecticut observes that Milberg Weiss was one of the counsel for a group of proposed Lead Plaintiffs in *Telxon* and was therefore fully aware of the Department of Labor's view.

**18.** WMPG includes the following institutional investors with their alleged respective losses: Binary Traders, Inc. ($4,067,173), Teachers Pension & Retirement Fund of Chicago ($3,126,696), CWAVITU Negotiated Pension Plan ($1,976,636), Phoenix Investments, Inc. ($1,426,046), Suffolk Capital Management ($1,157,256), American Home Life Insurance Company ($1,081,356), Local 133 Nursing Home Pension Fund ($861,500), Birmingham Retirement & Relief Fund ($830,391), Market Street Securities ($804,104), ILGWU UNITE Eastern States Health & Welfare Fund ($352,789), ILGWU National Retirement Fund ($298,103), and City of Philadelphia Board of Pensions & Retirement ($290,379). Hail Affidavit (# 35) at pp. 2–3.

**19.** They assert that collectively they have purchased or acquired 1,672,522 shares of Waste Management common stock and 35,000 bonds at prices artificially inflated by Defendants' material false and misleading statements. Motion (# 16) at p. 8.

**20.** In a footnote WMPG states that if the Court decides it does not have the largest financial interest among competing movants, it requests that the Court to aggregate the losses of and appoint all its movants as Lead Plaintiffs. The Court rejects such a suggestion in light of Congress' clear intention to limit the number of Lead Plaintiffs so as to increase control over the lawyers involved in prosecuting their claims. Furthermore, as noted above, in a much later pleading WMPG clarified that it was moving for all its investors to be appointed Lead Plaintiffs, not its eleven-member steering committee, that committee's three-member executive committee, or its twelve-member institutional committee.

*re Oxford*, 182 F.R.D. at 49 (appointing two institutions and three individuals as Lead Plaintiffs because "[s]uch structure allows for broad representation and sharing of resources and experience to ensure that the litigation will proceed expeditiously").

WMPG also insists it also meets requirements of Federal Rule of Civil Procedure 23. WMPG raises the following legal issues common to and typical of the class: whether Defendants violated federal securities laws; whether Defendants omitted or misrepresented material facts; whether Defendants knew, had reason to know or recklessly disregarded the fact that their statements were false and misleading; whether the price of Waste Management's stock was artificially inflated during the class period; and the extent of the damage sustained by class members and the appropriate measure of damages. WMPG also maintains that it will fairly and adequately represent the interests of the class, that there is no evidence of any antagonism between the interest of WMPG and that of the proposed class members. Each member of WMPG has submitted a signed certification affirming his, her or its willingness to serve as and assume the responsibilities of the class representative. Ex. 1, Greenberg Decl. Moreover, WMPG's selected law firms as co-lead counsel (Milberg Weiss Bershad Hynes & Lerach L.L.P. and Barrack Rodos & Bacine ("Milberg Weiss")) and as liaison counsel (Greenberg, Peden, Siegmeyer & Oshman, P.C.) are highly experienced in prosecuting securities class actions. Greenberg Declarations, Exs. 12–13.

WMPG does point out that its class period, from October 8, 1998 to August 2, 1999, is not as long as some asserted in the other consolidated class actions, but that fact alone does not make WMPG atypical or inadequate because all members of the class have the same or similar injury based on the same course of conduct by Defendants. *Lax v. First Merchants Accep-*

*tance Corp.*, No. 97 C 2715, 1997 WL 461036, *6 (N.D.Ill. Aug.11, 1997); *Chan v. Orthologic Corp.*, No. CIV 96–1514PHX RCB, 1996 WL 1082812, *3–4 (D.Ariz. Dec. 19, 1996). Should progression of this litigation reveal that the differing class periods significantly affect the parties' claims, the court can establish subclasses at that time. *Chan*, 1996 WL 1082812, *4.

**Opposition to WMPG's Motion**

**Connecticut** contends that the WMPG also is a collection of 660 unrelated investors that cannot satisfy the requirements of the PSLRA, the case law, the SEC, and the intent behind the PSLRA. Underlining the fact that the PSLRA was intended to curtail lawyer-driven litigation controlled by groups of law firms with figurehead plaintiffs, Connecticut asserts that WMPG's eleven-member steering committee appears to have been selected by forty law firms from a conglomeration of their 660 unrelated plaintiffs and that litigation control with such Lead Plaintiffs would be in the hands of lawyers. (Connecticut also accuses the forty-eight member WMI Institutional Shareholder Group, with its thirteen-member subgroup proposed as Lead Plaintiff, of the same inadequacy.) Connecticut criticizes WMPG for providing no information about the background of members of its steering committee (how and by whom they were chosen; the extent, if any, of prior relationships among them; and whether they have had communications regarding effective prosecution of the case and monitoring of the attorneys).

In reply to Connecticut, WMPG emphasizes that Connecticut, a group of six separate state employee pension systems with aggregated losses of $13.5 million, and Public Pension Funds Group, a collection of nine public employee pension funds with aggregated losses of $24.6 million (and with the addition of Houston Firefighters' Fund, if counted, another $800,000), cannot match WMPG, with its losses of $46.6 million for the entire group. WMPG's steering committee of eleven members, with their loss, alone, of more than $30 million,

thereby making the steering committee the group with the largest financial interest in the relief sought by the class of any competing group, would oversee and manage the litigation; indeed they have already met, conferred, and reviewed the litigation with counsel, decided upon a strategy, and put in place the mechanics for continued meetings and progression of the suit. Urging that the steering committee be appointed Lead Plaintiffs, WMPG provides a chart showing the source of the investment and the amount of loss of each member of the steering committee. # 50 at p. 2. It reiterates that Connecticut has never identified the losses of each of its members, but clumped them together to try to create one large loss. Moreover, WMPG underlines that its motion is filed on behalf of legally cognizable individuals and entities that were the actual beneficial purchasers of Waste Management securities with unquestionable standing to sue. It also is composed of representatives of all purchasers of all publicly traded securities of Waste Management and alone can fairly and adequately represent the entire class. WMPG reiterates that while the legislative history may reveal a preference for institutional investors, there is no statutory language that reflects that an institutional investor or a public pension fund deserves an advantaged position or status under the PSLRA. *Telxon*, at 821–822 & n. 30, 33 (avoiding any interpretation of the lead plaintiff provisions that "would transform a preference for institutional investors into a monopolization of the PSLRA actions by institutional investors").

WMPG points out that it, like Connecticut and Public Pension Funds, has public employee pension funds among its members, specifically the Chicago, Birmingham and Philadelphia employee funds. With regard to Connecticut's and Public Pension Fund's accusations that WMPG's proposed Lead Plaintiffs would be controlled by lawyers, WMPG argues that these two competing groups of public pension funds are not united, but are fighting over control of this case because of their separate counsel,

each firm trying to gain control of this litigation for themselves.

WMPG objects to any limitation on the number of its proposed steering committee. It insists that there is no arbitrary limitation on the number of Lead Plaintiffs indicated anywhere in the PSLRA and that the restriction of the number of Lead Plaintiffs to a handful is a minority view among courts. It further observes that the governing structures of its competitors are much more complex than they represent. For instance, the Connecticut State Teachers Retirement Fund has a board of twelve trustees, while the Connecticut Retirement Commission, which oversees several of the employee systems involved in this litigation, has fifteen trustees. The nine-member Public Pension Funds Group have individual boards of five-to-twelve trustees. WMPG contends that it, too, can play the numbers game. WMPG needs only its top three losers, who have aggregated losses of over $14 million, to beat the Connecticut Funds' $13.5 million in losses. It needs only its top three or top seven losers to top the remnants of the WMI Institutional Shareholder Group's losses of $24.1 million with the Hamm family losses, or $12.7 million in losses without the Hamm family. To overcome the Public Pension Funds' losses of $24.6 million, WMPG needs only its top eight losers' losses. Such an arbitrary approach, however, misses the key concern here, i.e., the creation of a real management or control structure for an oversight group that would also function as a representative of all potentially competing interests of the whole class. WMPG underlines the fact that it alone has sued for, sought to represent, and included recovery-seeking representatives of each type of purchaser of Waste Management's publicly traded securities, i.e., open market purchasers of common stock, acquirers of common stock in corporate exchange transactions, purchasers of 2% and 4% debentures, and purchasers of options to purchase Waste Management stock. It

insists that its "proposed two co-lead counsel and liaison counsel structure is lean, smaller than the larger multi-co-lead counsel, executive committee and co-liaison structures often used." There would be no duplication of work nor danger of excess hours of services because under the PSLRA, even if the case is unsuccessful, any fee and expense award is expressly limited to a reasonable percentage of the recovery, making the outcome rather than the number of hours expended on legal work the key. 15 U.S.C. 78u–4(a)(6). Indeed, excessive work would reduce counsel's return if they are successful. Moreover, the combined resources of the three firms could be of benefit.

### WMI Institutional Shareholder Group's Motion to Appoint Certain of its Representatives as Lead Plaintiffs and to Approve Choice of Counsel

WMI Institutional Shareholder Group, composed of forty-eight investors including significant institutional investors among which are public pension funds, asserts that it suffered losses in excess of $147 million because of its purchase of approximately 6.9 million shares of Waste Management common stock during what it calls the "relevant period," i.e., June 10, 1998 through August 16, 1999. Ex. 4, Chart Summarizing WMI Institutional Shareholder Group Losses. WMI Institutional Shareholder Group further claims that it satisfies Fed. Rule Civ. P 23 because its claims are typical of class members' claims (they are based on the same legal theories and arise from the same course of conduct giving rise to other class members' claims) and the designated representatives will fairly and adequately represent the class because their interests are aligned and there is no evidence of antagonism between the interests of WMI Institutional Shareholder Group and those of other members of the class. In addition, the WMI Institutional Shareholder Group has retained national law firms with substantial expertise in prosecuting securities fraud cases as class counsel: Bernstein Litowitz Berger & Grossmann, LLP, Stull Stull & Brody, and Weiss & Yourman as Lead Counsel, and Lynn Stodghill Melsheimer & Tillotson, L.L.P. and Hoeffner, Bilek & Eidman, L.L.P. as Texas liaison counsel. Ex. C to Berger Decl.; Ex. C to Brody Decl.; Ex. C to Weiss Decl.; Ex. G to Berger Decl.; and Ex. D to Weiss Decl.

WMI Institutional Shareholder Group points out that while each of its members has signed a certification expressing willingness to serve as a class representative, it offers thirteen of its members as Proposed Lead Plaintiffs, in a tactic similar to WMPG's eleven-member steering committee.[21] These thirteen have suffered more that $90 million in losses, representing over 60% of the damages incurred by the whole Group.[22]

In the course of this litigation, as noted earlier, significant changes occurred to WMI Institutional Shareholder Group's membership. In # 36, those members of the WMI Institutional Shareholder Group represented by Weiss & Yourman and Stull, Stull & Brody, whose investors purchased approximately 6.9 million shares of common stock and which suffered losses in excess of $136.2 million, thus making them the investors with the largest finan-

---

21. All but the last five of these are now part of the Public Pension Fund Group, which broke away from WMI Institutional Shareholders Group after it filed the instant motion: Louisiana School Employees' Retirement System; Louisiana State Employees' Retirement System; State of Louisiana Firefighters' Retirement System; City of Miami General Employees' & Sanitation Employees' Retirement Trust; City of Detroit Policemen and Firemen Retirement System; City of Detroit General Retirement System; New Orleans Employees' Retirement System; Jacksonville Police and Fire Pension Fund; Ambrose Hamm, on behalf of the Hamm Family; Ranier Investment; Pennsylvania Trust/Independence Capital; Franklin Street Partners; and Pacific Century Trust.

22. WMI Institutional Shareholder Group has not updated the Court on its recalculated losses since the withdraw of the Public Pensions Fund Group.

cial interest in the relief sought by the class, complain of improper contacts with those that have submitted certifications in support of their motion to be appointed Lead Plaintiffs. They assert that WMPG and its attorneys, Milberg Weiss, are attempting to go to any lengths to wrest control of this litigation from the real investors, including threatening Joseph H. Weiss of Weiss and Yourman. See # 38. They make general allegations of misconduct, egregious tactics, and ethical violations in Milberg Weiss' litigation of numerous securities fraud cases and charge that Congress has targeted the firm for many abusive practices in securities fraud class actions. *Id.*

Specifically with regard to the instant suit, the WMI Institutional Shareholder Group represented by Weiss & Yourman, Stull, Stull & Brody, & Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") filed their respective clients' certifications and the joint motion for appointment of Lead Plaintiffs and Lead Counsel. WMI Institutional Shareholder Group's original total damages were $136,239,694.70. Of that sum, the damages of those represented by Weiss & Yourman were $100,829,260.67; those represented by Stull, Stull & Brody, $12,773,998.04; and those represented by Bernstein Litowitz, $11,041, 833.88. Subsequently Weiss & Yourman attorneys heard rumors that Milberg Weiss was communicating with Weiss & Yourman's largest clients. Within the next few weeks, Ranier, Franklin Street, Pennsylvania Trust, and Pacific Century nearly simultaneously requested more information or asked to be withdrawn as proposed Lead Plaintiffs. The WMI Institutional Shareholder Group accuses Milberg Weiss, after failing to intimidate Weiss & Yourman from proceedings, causing Ranier, Pennsylvania Trust and Pacific Century to withdraw so that Milberg Weiss could have absolute control of this litigation.

WMI Institutional Shareholder Group further contends that WMPG has submitted certifications defective on their face or on behalf of unqualified Plaintiffs to obtain appointment as Lead Plaintiffs and approval of Milberg Weiss as Lead Counsel. Section 21(a)(2)(A) of the PSLRA requires, "Each plaintiff seeking to serve as a representative party on behalf of a class, shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint" attesting to, *inter alia,* the plaintiff's willingness to serve as a representative party on behalf of the class and to provide testimony if necessary, and the identity of any other actions brought under this Act that plaintiff sought to serve as a representative party in the last three years. Milberg Weiss included the certification of Glenn Goerke, who is not willing to serve as a representative party on behalf of the class unless he is "readily and easily available" and compensated for his time and all related expenses. The certification of Anthony Petropulos states, "I would not like to participate as lead plaintiff in this action." The City of Philadelphia's certification fails to identify the specific actions under federal securities laws in which it has sought or has served as class representative during the past three years. Furthermore, the WMI Institutional Shareholder Group claims that the City of Philadelphia has been a representative plaintiff in so many actions that it is no longer entitled to the presumption of adequacy because under the PSLRA [23] a plaintiff that has sought to serve or has served as a representative party in more than five class actions in the past three years is inadequate. *Telxon,* 808, 817–22; Weiss Declaration, Ex. E. Furthermore Milberg Weiss has submitted certifications from individuals who have purchased only a nominal number of shares of WMI stock or who have suffered minimal loss, e.g., John

---

**23.** The PSLRA bars a person from serving as a lead plaintiff in more than five securities class actions during any three-year period

"except as the court may otherwise permit consistent with the purposes of this section." 15 U.S.C. § 78u–4(a)(3)(B)(vi).

Adams, Segun Adeseye, Gopal and Karun Ahuja, Julian Arbus, Alex Arcega, Roberta Barbalace, William Cavanaugh, Douglas Gallwas, Lynn Greimann Hassebroek, Cynthia James, Keith Janson, Avril Johnson, David Lambert, Franklin Montgomery, William Mosely, Thomas Noyes, Joseph Stefans, and Anthony Wagner, IV.

WMI Institutional Shareholder Group argues that even after the withdrawal of Ranier, Pennsylvania Trust, and Pacific Century, without including the institutions represented by Bernstein Litowitz, it is still the group with the largest financial interest in the outcome of the litigation, since its incurred total losses amount to $76,603,032.33. Its members also satisfy the typicality and adequate representation requirements of Rule 23.

**Opposition to WMI Institutional Shareholder Group's Motion**

**Connecticut**, as noted earlier, charges the WMI Institutional Group's forty-eight unrelated investors,[24] with its proposed Lead Plaintiff group of thirteen, with failing to constitute a "group" under the PSLRA, case law, and SEC standards and reflecting lawyer-driven litigation to be controlled by three co-lead counsel. Moreover, Connecticut emphasizes that seventeen days after filing its motion, the WMI Institutional Shareholder Group collapsed, with three members withdrawing from litigation[25] and eight others, the current Public Pension Group, "dissociating" themselves from the group and applying for appointment of Lead Counsel on their own. Connecticut insists that this disintegration underscores WMI Institutional Shareholder Group's lack of cohesion or ability to control the litigation or to monitor its counsel. Moreover, like WMPG, WMI Institutional Shareholder Group has provided no meaningful information about the remaining members of the proposed Lead Plaintiff group.

In # 34, supported by the declaration of David C. Walton, **WMPG** argues that WMI Institutional Shareholder Group's alleged damages are overstated by at least $16,327,795 and details where and why.

In # 37, supported by # 38, WMPG further accentuates its opposition to WMI Institutional Shareholder Group's motion for appointment of Lead Plaintiffs and approval of Lead Counsel with substantial name-calling and allegations of illegal and unethical activities of counsel. *Inter alia,* WMPG claims that Ranier Investment and Paul Burke, who claim losses of $17 million and $9 million respectively, disavowed their certifications as unauthorized and obtained by misleading practices and have withdrawn membership in or support of that group. Local 804 IBT, Local 447 IAM, and Local 177 IBT United Parcel Service's certificates were unauthorized. Local 804/477's certification was never signed and was superseded by another certification given to Taft–Hartley, represented by Schoengold and Sporn. WMPG describes Group Local 177's certification as "extremely dubious—signed in an illegible scrawl, by an unidentified person on a separate page." WMPG accuses WMI Institutional Shareholder Group of deliberately double counting the $2,887,222 loss of the IBEW–NECA Equity Index Fund and the Ebenaceae Equity Index Fund, for which there is only one certification and for which WMI Institutional Shareholder Group claims $5.6 million in damages. The Ambrose Hamm family, with its claimed losses of $13 million, are not appropriate Lead Plaintiffs because they are involved in extensive private litigation alleging fraud and unjust enrichment, seek-

---

**24.** Connecticut describes those investors as "eight pension funds, twenty-seven various types of investors, and 13 members of a family who obtained WMI stock when they sold their business to [Waste Management]."

**25.** Ranier Investment (which, although claiming to have the single largest loss, Connecticut challenges was actually the manager for seventy-nine individual entities who bought the Waste Management stock), Pacific Century Trust, and Pennsylvania Trust withdrew as proposed Lead Plaintiffs.

ing millions of dollars in compensatory and punitive damages from Waste Management Inc., and which they attempted to conceal from the court. Moreover, notes WMPG, Ambrose Hamm was found to be an inadequate class representative in a previous securities class action that he filed because of his lack of commitment to and familiarity with the matter. *HSL, Inc. v. Daniels,* 1983 WL 1385 at *2–3, 12, No. 81 C 7117, 1983 U.S. Dist. LEXIS 143 at *5–7, 29–32 (N.D.Ill. Aug.25, 1993). Furthermore, maintains WMPG, WMI Institutional Shareholder Group is inadequate because it does not seek to represent and/or recover losses for purchasers of Waste Management Inc.'s 2% and 4% publicly traded convertible debentures due in 2005 and 2002, respectively. In contrast WMPG includes two institutional investors who purchased these convertible debentures and seeks recovery on behalf of purchasers of all publicly traded securities, including the debentures, of Waste Management Inc.,[26] and it maintains that the interests of stockholders and debt holders here are not antagonistic and the class may contain both groups of investors. *Endo v. Albertine,* 147 F.R.D. 164, 167 (N.D.Ill.1993)("facts and legal theories asserted by the class to prove any violations [false and misleading statements or omission of material facts] will be identical regardless of the type of security at interest"); *Epstein v. Moore,* 1988 WL 62213 at *3 [1988–1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,957, at 90,443 (D.N.J. 1988)("where an allegation has been made of a scheme to defraud purchasers of both debentures and stock, both groups have an interest in demonstrating a common course of misrepresentations and omissions").

With a chart of quoted examples, WMPG also argues that WMI Institutional Shareholder Group plagiarized Milberg Weiss' complaint in its Local 144 complaint filed on 7/20/99. Weiss and Brody's only contribution was to extend the putative class period back to 6/10/99 "to increase their search and solicit universe" of putative plaintiffs.

In a reply declaration by Joseph H. Weiss (# 72) with documentary attachments in support of WMI Institutional Shareholder Group's motion for its appointment as Lead Plaintiffs responds to some of the specific accusations made against them. Because they have not affected the Court's ultimate rulings, it does not address them here other than to note they were reviewed.

### Gersh Korsinsky's Motion to be Appointed Lead Plaintiff and for Approval of Lead Counsel

Korsinsky's motion is filed on behalf of a class or subclass of purchasers of Waste Management call options and sellers of Waste Management put options, i.e., "the Option Class," during the class period between February 25, 1999 and August 2, 1999. It further asks for approval of his selection of Harold B. Obstfeld, P.C. and Beatie and Osborn L.L.P. as co-lead counsel for the Option Class, and of Bilek & Eidman, L.L.P. as Texas liaison counsel.[27]

The gravamen of Korsinsky's motion is that an option class or subclass would be better protected by separate representation in Lead Plaintiff and Lead Counsel because there are defenses involved that are unique to options investors. *Chill v.*

---

**26.** WMPG also charges Weiss and Brody firms with improper nationwide solicitation. As this Court has indicated in *Landry,* which involves the same counsel and the same accusations, it finds that Weiss and Brody's conduct was not illegal. It therefore does not address the accusations again.

**27.** Korsinsky also alleges that Defendants disseminated materially false statements about Waste Management, Inc.'s earnings, revenues, and success in integrating its acquisitions and that the scheme allowed twelve company executives to sell through insider sales more than 1.3 million shares of stock for proceeds of $70 million. As a result, Korsinsky asserts, the market price for the call options was artificially inflated and that for the put options, artificially deflated.

*Green Tree Financial Corp.*, 181 F.R.D. 398, 405–07 (D.Minn.1998). While the Third Circuit Court of Appeals has held that options investors have standing to sue for Section 10(b) damages, other appellate courts, including the Eighth and the Fifth, have not yet decided the question. *Id.* One court has ruled that an options investor may sue under Section 10(b) only for affirmative misrepresentations, but not for material omissions. *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 775 (D.Mass. 1988). Such is not the case for common stock investors. Furthermore loss, causation, and damages are significantly different for an options investor's Section 10(b) claim than a stock investor's. Korsinsky explains that the value of an option is calculated not only by the difference between the strike price and the market price of the underlying shares, but also by the amount of time remaining before the option expires. The shareholder class is not affected by this time factor. Damages for the shareholder versus the option holder may be maximized at different times during the class period. Conflicts may also arise regarding divisions of the proceeds of a settlement or a judgment. *Winpisinger v. Aurora Corp.*, 469 F.Supp. 782, 787 (N.D.Ohio 1979)(courts have concluded that different lawyers are necessary for each subclass to avoid any possible conflict of interest).

Korsinsky observes that some courts have held in Section 10(b) actions that the purchaser of one type of investment may not be certified as the representative of purchasers of other types of investments. *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 531 (D.Me.1991)(the court limited the representation to that of purchasers of common stock because none of the plaintiffs owned any other securities); *Model Associates, Inc. v. U.S. Steel Corp.*, 88 F.R.D. 338, 340 (S.D.Ohio 1980)(certification of a debenture class denied where the plaintiff owned only common stock); *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, 581 (S.D.N.Y.1972)(a holder of common stock may not represent Class A

stockholders); *Weisberg v. APL Corp.*, 76 F.R.D. 233, 241 (E.D.N.Y.1977)(court required certified class to include holders of separate classes of securities); *Herbst v. Able*, 278 F.Supp. 664, 668 n. 6 (S.D.N.Y. 1967)(only debenture holders certified where none of plaintiffs purchased common stock because "the interests of the debenture holders might be in conflict with the interests of the holders of other Douglas securities").

Other courts have permitted options investors to be represented by an investor in shares without separate representation. *See, e.g., In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J.1998). Korsinsky notes that *Cendant* was decided by a district court in the Third Circuit, which, as discussed, recognizes standing for options investors under Section 10(b) and that the appointed lead plaintiffs were holders of "each type of security held by the putative plaintiff class." Korsinsky urges caution at this early stage with respect to any potential conflict between the options and shares investors by appointment of separate lead plaintiff and approval of separate lead counsel for an options class. *Cohen v. Uniroyal*, 77 F.R.D. 685, 693 (E.D.Pa.1977)(cautiously certifying class composed of only shareholders). He asks the Court to establish a separate class or sub-class of options investors and, if discovery reveals there are no conflicts between the share and options investors, the Court can fold the options class or subclass back into the structure of the share class.

Furthermore Korsinsky represents that he is the most adequate plaintiff of the options class because he has satisfied the statutory requirements of notice, complaint, motion for appointment, and largest financial interest in the outcome as it pertains to options. Korsinsky relates that he has sold ten put options with respect to 1,000 shares of Waste Management stock and has received $812.50, but that after the substantial decline in the stock's market value, he had to purchase 1,000 shares

at $25 per share at the end of the class period. Furthermore, Korsinsky maintains that he satisfies Rule 23's typicality and adequacy requirements. Regarding typicality, like other members of the options class, he purchased call options at artificially inflated prices because of Defendants' false and misleading statements and sold options for too little. Moreover, each member of the options class also has an interest in establishing standing for options investors to sue under Section 10(b) of the Exchange Act and proving the maximum amount of damages for his options investment. As for adequacy, Korsinsky's interests are aligned with those of other options class members and he states that he will zealously prosecute his claims, as evidenced by his filing this action on behalf of the options class and signing a certification reflecting his willingness to assume the responsibilities of a class representative. Obstfeld Aff., Ex. B. In addition, Korsinsky insists that his chosen, counsel, Beatie and Osborn LLP and Harold B Obstfeld, P.C. are highly experienced in consumer and securities class action litigation and will provide the highest caliber of representation. Obstfeld Aff., Ex. C.

### Opposition to Korsinsky's Motion

In # 29, the **Public Pension Fund Group** objects to Korsinsky's motion to be appointed Lead Plaintiff of a subset of options purchasers on the grounds that options and other equity-type securities of a particular issuer are derivative securities of common stock. *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir.1988), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D.Cal.1991)("[T]he value of options is directly related to the value of common stock."). The Public Pension Fund Group concludes there is no conflict between purchasers of options and purchasers of common stock to justify a separate options subclass.

In # 34, **Connecticut** also objects to the need for a separate Lead Plaintiff for an options class and points out that the same argument was rejected in *In re Orbital Sciences Corporation Securities Litigation ("Orbital II")*, 188 F.R.D. 237, 238 (E.D.Va. July 30, 1999)(Compendium Ex. I)(finding that although the shareholders' and option holders' interests were different, "they share a mutual interest in having the Court resolve these questions about whether the Defendants made any misstatements or omissions, whether they did so with scienter, and whether the price of Orbital's common stock became artificially inflated as a result."). The court further noted that the creation of a lead plaintiff for a subclass would result in multiple counsel duplicating work and would be an impediment to the effective management of the litigation. *Id.* at 239–240. The *Orbital II* court consolidated the claims into one case with shareholder Lead Plaintiffs asserting claims for both purchasers of stock and of options. Furthermore, Connecticut objects to Korsinsky seeking court approval of three law firms for one options holder who sold ten put options. In sum, argues Connecticut, the Court should deny Korsinsky's motion for the same reasons as the *Orbital II* judge denied the options holder's request: the subclass is unnecessary and the addition of more counsel will be counterproductive. Connecticut maintains that it can prosecute claims on behalf of purchasers of stock and purchasers of options.

### Public Pension Funds Group's Motion for Order Appointing Lead Plaintiff and Approval of Lead Counsel

The Public Pension Funds, which allegedly lost $24.66 million dollars (Ex. A to # 29) as a result of Defendants' conduct, states that it has joined with four other entities and a substantial individual investor, represented by Weiss & Yourman and Stull Stull & Brody, to seek the role of Lead Plaintiff here. They argue that their loss is twice that suffered by Connecticut ($13.59 million) and far more than that

suffered by Taft–Hartley ($2.51 million). As for WMPG, the Public Pension Funds argue that WMPG is composed of 668 members and forty law firms without any discernible connection and it therefore does not constitute a "group" within the meaning of the PSLRA. Even the eleven-member steering committee fails to qualify. Courts have routinely rejected the appointment of a large group of unrelated members represented by separate counsel. *In re Baan,* 186 F.R.D. 214, 217 (D.D.C. 1999)("The Lead Plaintiff decision should be made under a rule of reason but in most cases three should be an initial target, with five or six as the upper limit"); *Yousefi v. Lockheed Martin,* 70 F.Supp.2d 1061, 1070–71 (C.D.Cal.1999)(rejecting proposed Lead Plaintiff group of 137 unrelated investors and appointing two investors, an individual and an institution).

The Public Pension Funds Group asserts that the eleven members [28] of the WMPG lack any apparent relationship to each other, and the forty law firms have merely aggregated the losses of all the members together. Such an unwieldy, unconnected group would defeat the purpose of the PSLRA to vest control of the litigation in the hands of a few investors and not of the lawyers. While WMPG highlights the fact that its Lead Plaintiffs can adequately represent the diversity of the group, such a claim is the flip side of the goal of a cohesive, unified group for litigation control. *In re Milestone Scientific Sec. Litig.,* 183 F.R.D. at 417 ("Focusing on considerations such as diverse representation ... overlooks the fundamental goal of the PSLRA, that of empowering a unified force to control the litigation."); *Takeda v. Turbodyne Tech., Inc.,* 67 F.Supp.2d 1129, 1135 (C.D.Cal.1999)(PSLRA's preference for Lead Plaintiff is large, sophisticated, institutional investors).

In contrast, the Public Pension Funds contend that they are the type of Lead Plaintiff contemplated by the statute and they satisfy the statutory requirement of a "group of plaintiffs." They manage billions of dollars in assets for governmental employees and retirees. Their trustees, officers and legal counsel, who wish to oversee this litigation, come from four states, but the funds are closely connected, with shared inside and outside counsel and trustees. As "a cohesive and tight unit that qualifies as a 'group' under the PSLRA," they have retained only two law firms, from Texas and New York, to represent them, they are all public pension fund systems, most of the officers and trustees belong to the same professional organizations and interact and work closely together addressing common issues faced by public pension fund systems, there are multiple overlaps between the general counsels and trustees for the pension funds from Louisiana and Florida, the Florida pension systems share a common general counsel, and the Detroit systems have common trustees on their boards. See Declaration of R. Randall Roche, General Counsel of Louisiana School Employees' Retirement System and Louisiana Firefighters' Retirement System, Ex. A to # 60.

The Public Pension Funds Group also argues that three of WMPG's proffered members [29] do not satisfy the typicality requirement of Rule 23 of the Federal Rule of Civil Procedure because they acquired their stock through privately negotiated sales of their businesses and had access to private documents and an opportunity to perform due diligence unlike the other class members. Moreover, the sale of these businesses in exchange for the Waste Management stock could give rise

---

**28.** The Public Pension Funds Group notes that WMPG actually lists twelve members, and one, Phoenix Investments, Inc., is an aggregation of losses suffered in distinct accounts owned beneficially by numerous investors. Thus the group is much larger than characterized by WMPG.

**29.** Everett O. Harwell, Jr., Dickie Harwell, and Vincent Morea.

to breach of contract claims that are not possessed by other members of the class.

### Opposition to the Public Pension Funds Group

WMPG argues that the Public Pension Funds Group appeared after the sixty-day period for filing a motion for appointment as Lead Plaintiff had expired on September 1999 and is therefore procedurally barred from such an appointment. The Public Pension Fund Group contends that it was clearly a discrete member of the original motion for appointment of Lead Plaintiff and approval of Lead Counsel timely filed by WMI Institutional Shareholder Group (# 17) and is entitled to participate based on that motion. It filed a memorandum (# 29) on September 27, 1999, after expiration of the 60–day period following publication of notice, indicating that it would independently seek appointment as Lead Plaintiff.[30] The initial motion was never amended. The plain language of the PSLRA excludes consideration of any lead plaintiff request filed after the 60–day window has closed.

In reply (# 60), the Public Pension Fund Group reiterates its challenge that WMPG as not cognizable as a "group" under the PSLRA because it is comprised of 668 unrelated investors represented by forty different law firms. The twelve members of the steering committee sub-group's only common trait is that they were hand-picked by their counsel because they had the largest losses of the group. WMI Institutional Shareholder Group also consists of twenty-four unrelated investors randomly brought together through their counsel's solicitation program and does not qualify as a "group" under the PSLRA. In contrast, the Public Pensions Fund Group, a cohesive group of public pension fund systems from four states that have worked closely together in the past and are otherwise closely connected, holds itself out as a capable representative of

purchasers of all publicly traded securities of Waste Management, including convertible debentures and options, and therefore the most adequate plaintiff for this litigation. It insists that it is well established that purchasers of one type of security have standing to pursue claims on behalf of purchasers of other types of securities from the same issuer. *Forbush v. J. C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993)(certifying class of participants in four ERISA plans even though class representative held interest in only one of the plans); *Trafton v. Deacon Barclays de Zoete Wedd, Ltd.,* 1994 WL 746199, at \*10, 1994 U.S. Dist. LEXIS 20971, at \*29 (N.D.Colo.1994)(permitting stock purchaser to represent debenture holders "where claims are based on the same or similar misrepresentations"); *Endo v. Albertine,* 147 F.R.D. 164, 167–68 (N.D.Ill.1993)(allowing stock purchaser to represent debenture Holders); *Epstein v. Moore,* 1988 WL 62213, [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,957, at 90, 442–43 (D.N.J. June 13, 1988)(allowing debenture and stock warrant holder to represent class of common stock purchasers). The Public Pension Funds assert that here all the claims are based on the same misrepresentations by Waste Management and all purchasers of its publicly traded securities share the same interest in proving the falsity of the financial information underlying all their claims.

The Public Pension Fund Group maintains that it timely filed a lead plaintiff motion on September 7, 1999, within the sixty-day period allowed under the PSLRA, when it was still part of the WMI Institutional Shareholder Group. Moreover it was separately listed and identified, and its total loss of $24.66 million was separately and discretely described and identified, independently of other proposed lead plaintiffs, in that motion, and it was represented by separate counsel. After

---

**30.** WMPG claims that Public Pension Funds wanted to desert the WMI Institutional Shareholder Group after WMPG exposed the al-leged illegal and unethical conduct of that group and its attorneys in soliciting class members.

the motion was filed, some of the other lead plaintiff clients, separately identified and represented by other counsel, withdrew from the case.

## Court's Ruling

This Court would first emphasize that it expects professional conduct and courtesy from counsel in this action, without further conclusory accusations and name-calling. Certainly any firm that would be an adequate lead counsel in an action of this magnitude should conduct itself in an appropriate manner. All the firms proposed as lead counsel here are experienced and competent legally to represent the class; it would be unfortunate for the firms, their clients, and this litigation if uncalled for and unprincipled tactics and quarrelsome denigration of their competitors undermine their images and distract from the purpose of this action.

It is obvious that any law firm could attempt to control this litigation by accumulating as many plaintiffs as possible with no relationship to each other from investors during the class period and merely aggregate their claims to achieve the largest financial interest in any recovery. Thus the concerns underlying the PSLRA for wresting control of the litigation away from the lawyers and making a plaintiff or a group of related plaintiffs the monitors and controllers of the litigation must restrict such an approach, in addition to Rule 23's requirements of typicality and adequate representation to protect the proposed class members. The Court does not believe that automatic arbitrary restrictions, such as a specific number of Lead Plaintiffs or a specific common connection should be required in all class actions under the PSLRA, but finds that the circumstances of each suit must be considered in determining appropriate restraints on random aggregation by counsel. This class action is unusually large and is complicated by the variety of investments and the methods by which the securities were obtained.

The Court, in its summary of the applicable law, has indicated its support for a narrow construction of the PSLRA and the requirement to appoint as Lead Plaintiff(s) one or a very limited number of related investors, preferably institutional, that have the greatest financial interest in the recovery sought by the class and are capable of adequately representing the class and monitoring counsel throughout this litigation. The Court's stated preference is based on the statute, the legislative history of the PSLRA, the SEC's *amicus curiae* briefs, and the trend in recent case law, for not only the institutional investor(s) with the largest financial interest in the class recovery, as noted a circumstance easily manipulated by massive recruitment of plaintiffs, and for a limited number of investors while still satisfying Rule 23's requirements of typicality and adequate representation.

After carefully and thoroughly reviewing the submissions of all parties and their counsel, and reading the numerous cases submitted or cited by the parties, this Court finds that WMPG and WMI Institutional Shareholders Group are too large and too unconnected to anything other than their loss and their counsel to serve the purposes of the PSLRA Lead Plaintiff. The proffered subgroups appear to have been picked by counsel, who have not provided any evidence of the basis of selection nor of affiliation and internal coherency among the group members, not to mention an ability to control the litigation and the lawyers. Because of these deficiencies, the Court does not address the allegations of misconduct of their counsel in pursuing and accumulating plaintiffs in a misguided effort to aggregate the largest interest in recovery by their sheer numbers, with no concern for interrelatedness, and of conclusorily attacking competing groups without evidence of alleged deficiencies in this action other than noting that a number of other courts have criticized similar conduct.

This Court also concludes that at this time the appointment a Lead Plaintiff for an options subclass, especially one represented by several law firms, does not appear necessary and therefore it denies Korsinsky's motion. Should conflicts arise subsequently, the Court will entertain another motion from Korsinsky or other class members who have purchased or sold Waste Management options during the class period that specifically addresses the issue.

Thus the Court is left with a choice between Connecticut and the Public Pension Funds Group. As noted, the requirement that the plaintiff with the largest financial interest in the class's recovery is presumptively entitled to appointment as lead counsel must be viewed not merely in terms of aggregating losses but also having some pre-existing connection or affiliation with each other besides that monetary loss.

Viewing the briefs and evidence submitted by the two Groups, the Court finds that Connecticut has demonstrated that legally it functions a single investor and has the largest interest in the recovery, $13,593,617. An institutional investor that invests the monies pooled into it from numerous, interrelated funds, Connecticut is under the direction of a single individual, the Treasurer of the State of Connecticut, who is also the sole custodian and trustee for Connecticut, capable of adequate monitoring, coordination, and accountability in this litigation. Neither Connecticut nor the underlying funds have boards of trustees. Thus the Court views it as one "person" under the PSLRA.

The Court further finds that Rule 23's requirements are satisfied here: the proposed class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; Connecticut, as a substantial investor in both common stock and the 2% and 4% debentures during the relevant period, can adequately represent the claims and defenses of the putative class; and Con-necticut, with its resources, organization, and commitment, as well as demonstrated concern with holding down attorney's fees for the class' benefit, will fairly and adequately represent the interests of the class. Its counsel have been shown to be knowledgeable about and experienced in federal securities fraud class actions.

The Court is willing to recognize WMI Institutional Shareholder Group's timely filed motion, with its discrete presentation of the subsequent Public Pension Funds Group members' losses, as including and constituting an adequate timely motion for appointment of Lead Plaintiff for the Public Pension Funds Group. Nevertheless, the Public Pension Funds, eleven members with joinder of Houston Fire Fighters and the two Taft–Hartley funds, though showing some current overlapping relationships in shared counsel and officers, is not a single investor but now a large and growing group of essentially distinct pension funds, thus increasing the number of proposed Lead Plaintiffs and diluting their abilities to monitor counsel and control the litigation. Its interest in recovery, $24.66 million, is an aggregated amount obtained from adding the losses of the members. Because the Court concludes that Connecticut is the more adequate Lead Plaintiff under the PSLRA, the legislative history, and the recent case law, as explained, it denies the Public Pension Funds Group's motion.

Accordingly, for the reasons indicated above, the Court ORDERS that

(1) the following unopposed motions are GRANTED: Motion to add the Houston Firefighters' Relief and Retirement Fund to join the Public Pension Fund Group (# 28); Connecticut's petition for leave to file reply memorandum in support of its appointment as Lead Plaintiff (# 64) and petition for leave to substitute original affidavit for its faxed affidavit (# 74); WMPG's motion to vacate order issued by Judge Gilmore in the *Korsinsky* matter appointing Lead Plaintiff (# 75); and Connecticut's mo-

tion for leave to file response to additional submissions by WMPG and the Public Pension Fund Group (# 103).

(2) WMPG's motion for expedited consideration (# 59) is MOOT in light of this order;

(3) Motion of the City of Philadelphia, through its Board of Pensions and Retirement, for appointment as Lead Plaintiff and for Approval of Lead Counsel (instrument # 7), is WITHDRAWN;

(4) WMPG's motion for expedited consideration of motion and, in addition, motion for the Court to review two additional documents *in camera* and to file them under seal (# 108) and supplement and motion for the Court to review two additional documents *in camera* and to file them under seal (# 111) are DENIED;

(5) Motion of Taft–Hartley for appointment of Lead Plaintiffs (# 11–1) is MOOT and for approval of Lead Counsel with that of the Public Pension Funds Group is DENIED;

(6) Motion of the Connecticut for appointment as Lead Plaintiff and approval of its selection of counsel, Goodkind Labaton Rudoff & Sucharow LLP (# 14) is GRANTED;

(7) Motion to appoint the WMPG as Lead Plaintiffs and to approve Lead Plaintiffs' choice of counsel (# 16) is DENIED:

(8) The derivative motion of the Public Pension Fund Group (# 16 and # 29) to appoint Lead Plaintiff and Approve Lead counsel is DENIED; and

(9) Korsinsky's motion to appoint him Lead Plaintiff and appoint Lead Counsel (# 3 in H–99–2838) is DENIED.

Lead Plaintiff shall file an amended complaint by June 30, 2000. Defendants shall file a timely responsive pleading. After the Court addresses any motions to dismiss, it will establish a docket control schedule if appropriate.